**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

KENNETH PATTERSON,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

Defendant.

No. EDCV 08-1152 AGR

MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Patterson filed a Complaint on September 4, 2008. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on October 3 and 9, 2008. (Dkt. Nos. 8-9.) The parties filed a Joint Stipulation ("JS") on July 14, 2009, that addressed the disputed issues in the case. (Dkt. No. 20.) The Commissioner filed the certified administrative record ("AR"). The Court has taken the Joint Stipulation under submission without oral argument.

Having reviewed the entire file, the Court affirms the Commissioner's decision.

///

///

///

///

## I.

## PROCEDURAL BACKGROUND

In May 6, 2003, Patterson filed an application for supplemental security income benefits, alleging a disability onset date of January 1, 2002. AR 11-13, 146-50. The application was denied initially and upon reconsideration. AR 49. Patterson requested a hearing. On February 25, 2005, an Administrative Law Judge ("ALJ") issued an order of dismissal based on Patterson's failure to appear at his hearing and counsel's representation that he was unable to reach him. AR 73-74. On September 9, 2005, the Appeals Council vacated the ALJ's order of dismissal and remanded for further proceedings. AR 126-28. On January 17, 2006, a different ALJ conducted a hearing at which Patterson, a vocational expert ("VE") and a medical expert testified. AR 751-75. On May 13, 2006, the ALJ issued a decision denying benefits. AR 46-56. Patterson requested review. On November 1, 2006, the Appeals Council vacated the ALJ's decision and remanded for resolution of certain issues detailed in its order. AR 37-40.

On remand, on April 24, 2008, a different ALJ conducted a hearing at which Patterson and a VE testified.[1] AR 782-801. On May 21, 2008, the ALJ issued a decision denying benefits. AR 8-20. Patterson requested review. The Appeals Council denied review on July 17, 2008. AR 5-7. This lawsuit followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] At a previous hearing on October 5, 2007, counsel represented that Patterson was hospitalized and could not appear. AR 778.

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Moncada*, 60 F.3d at 523; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

**III.**

**EVALUATION OF DISABILITY**

**A. Disability**

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

**B. The ALJ's Findings**

The ALJ found that Patterson has the following severe impairments: "a depressive disorder, alcohol abuse, a personality disorder, a seizure disorder and a history of fracture of the right wrist and left ankle with residual pain." AR 14. Patterson has the residual functional capacity ("RFC") to perform sedentary work "as [he] can lift and/or carry 10 pounds frequently and 20 pounds occasionally, sit 6 hours and stand or walk 2 hours in an 8-hour workday, and can occasionally kneel, crouch and crawl. In addition, [he] has no mental restrictions in daily activities and no difficulties in maintaining social functioning. His concentration, persistence or pace is not impaired and he has no repeated episodes of emotional deterioration in work-like situations. [He]

has no limitations in his abilities to understand, remember and perform simple or complex instructions, respond to co-workers, supervisors and the general public, respond appropriately to usual work situations, and deal with changes in a routine work setting." AR 15-16.

The ALJ found that Patterson cannot perform his past relevant work. AR 18. However, "there are jobs that exist in significant numbers in the national economy that [he] can perform," including, for example, telemarketer, parking lot cashier or fuel island courtesy clerk, and gate guard. AR 19.

**C. Side Effects Of Medications**

Patterson points to two Disability Reports in the record, each of which he prepared. AR 214, 264. In a May 20, 2003, Disability Report - Adult, he stated that he is taking Tegretol, Dilantin, Zyprexa, Remeron, Ranitidine, Isoniazid, Pyridoxine, Enalapril and Zoloft, AR 214, with side effects listed as "tired," "dry mouth" and, with the Ranitidine and Isoniazid, "urinate a lot." AR 214. In an undated Disability Report - Appeal, Patterson stated he is taking Tegretol, Dilantin, Hydrochlorothiazide, Seroquel, Ibuprofen, Lotensin, Remeron, Trazodone and Celexia, with similar side effects ranging from fatigue and incoherence to sleepiness/drowsiness, increased urination and sweating. AR 264 & 266.

At the hearing on April 24, 2008, Patterson testified that he takes Seroquel "when I have it," AR 789-90, 796, as well as Remeron and Celexia. AR 796. However, he did not identify any side effects from the medication. Patterson does not cite any medical records indicating he mentioned or complained about side effects, and the court has located none. *E.g.*, AR 518, 524 (claimant denies side effects). Patterson does not cite any evidence that side effects interfere with his ability to work. The ALJ did not err. "There were passing mentions of the side effects of [plaintiff's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [his] ability to work." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (side effects such as "dozing off" and "dry mouth" not severe enough); *see also*

*Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985) ("[Plaintiff] produced no clinical evidence showing that narcotics use impaired his ability to work").

**D. Treating Psychiatrists' Opinions**

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotation marks omitted).

Patterson contends that the ALJ did not consider the opinions of treating psychiatrists Dr. Nguyen (three examinations on 6/30/04, 8/5/04, and 2/26/05); Dr. Charles (2/24/05); and Dr. Harris (9/20/06), who each diagnosed Patterson either as schizophrenic, paranoid type, or with a psychotic disorder, not otherwise specified.[2] JS 7-9; AR 518-19, 661-66, 684-85, 696-97, 617-21, 623. Patterson also cites an unsigned July 2007 intake form, AR 738, diagnosing him with psychosis, not otherwise specified. The ALJ properly attributed this assessment to a "non-medical source" rather than a treating psychiatrist. AR 17, 738 (indicating licensure status as "MSW").

Although the ALJ did not refer to the treating physicians by name, the ALJ considered the opinions and provided specific and legitimate reasons for rejecting them. AR 16-17. The ALJ acknowledged that the medical records indicated Patterson felt paranoid and heard voices, but noted that these incidents occurred when Patterson stopped taking his medication. AR 17. The ALJ's findings are consistent with Dr. Nguyen's opinions. AR 518 (diagnosing schizophrenia, paranoid type, after Patterson had not taken medications for two months and said "he hears voices," 6/30/04); AR 661

---

[2] Patterson does not contest the ALJ's findings regarding his physical residual functional capacity, other than the side effects of medications, addressed above.

(Patterson complains of hearing voices after being discharged without medication, 2/26/05); AR 684 (diagnosing schizophrenia, paranoid type after Patterson stopped taking medication for two weeks and complained of hearing voices, 8/5/04). Dr. Nguyen noted that Patterson said the medication "helped me not hearing voices." AR 684. Dr. Nguyen assessed that Patterson's behavior was calm and cooperative, his psychomotor activity was normal, his speech was clear and relevant, his thought process was goal oriented, his affect was appropriate and his mood was neutral. AR 663. Patterson was alert, oriented, and of average intelligence with fair concentration, recall, memory, judgment and insight. *Id.* The ALJ expressly cited a February 23-24, 2005 treatment note that diagnosed alcohol abuse with a Global Assessments of Functioning ("GAF") of 40, which corresponds to Dr. Charles' note. AR 17, 696-97. Patterson had stopped taking his medications for four days. AR 699. Finally, Dr. Harris' note on September 20, 2006 diagnosed schizophrenia, paranoid type after Patterson had stopped taking his medications for five days and complained of feeling paranoid. AR 617. Dr. Harris' mental status exam noted that Patterson's behavior was cooperative, his psychomotor activity was normal, his speech was clear, his thought process was goal oriented, and his affect was constricted. Patterson was alert, oriented, and of average intelligence with fair recall, memory, insight and judgment. AR 619-20.

Patterson's argument that the treating physicians' diagnoses alone establish "significant functional limitations" is incorrect. JS at 10. "[T]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993); 20 C.F.R. § 416.920(f), (g). Moreover, impairments that can be controlled effectively with medication are not disabling for purposes of SSI benefits. *See Warre v. Commissioner of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Patterson also argues that the ALJ failed to address that some GAF scores of 40 and 50, as opposed to Dr. Parikh's assessed score of 70. JS at 7-9. Patterson's argument is incorrect. The ALJ expressly contrasted a GAF of 70 and 40 in his opinion.

AR 17. Even so, a GAF is not determinative of mental disability for Social Security purposes. *See* 65 Fed. Reg. 50746, 50765 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."). Failure to reference a GAF score, standing alone, does not make an ALJ's findings inaccurate. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting argument that ALJ erred in failing to mention GAF score). The ALJ did not err.

**E. State Agency Psychiatrist's Opinion**

Patterson contends that the ALJ did not address the July 18, 2003 opinion of non-examining state agency psychiatrist Dr. Hurwitz. JS 13; AR 486-502. However, according to the ALJ, "the state agency medical opinions are given weight as they are consistent with the record as a whole."[3] AR 18.

"'The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r, SSA*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted, emphasis in original). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Dr. Hurwitz completed a state agency "residual functional capacity assessment" form. Dr. Hurwitz diagnosed Patterson's alcohol abuse. AR 486. Dr. Hurwitz found that Patterson had "adequate sustained cognition to perform simple repetitive work tasks." AR 502. He further opined that Patterson "can relate appropriately with coworkers and supervisors, but not with the public." *Id.* Consistent with his conclusions, Dr. Hurwitz found that Patterson was "not significantly limited" in his ability to remember locations and work-like procedures, understand and remember simple and

---

[3] The Commissioner contends the ALJ rejected Dr. Hurwitz's opinion as inconsistent with the medical evidence. JS 15. However, the page cited by the Commissioner, AR 18, does not support that assertion.

detailed instructions, carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine, work in coordination or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. AR 500-01. Dr. Hurwitz checked boxes indicating Patterson had moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the public. AR 500-01.

In this case, the ALJ relied on examining physician Dr. Parikh's opinion dated July 8, 2007. AR 16-17, 706-13. Dr. Parikh's diagnosis included "[m]ood disorder, secondary to substance abuse," and "[a]lcohol dependence." AR 711. His prognosis was that Patterson's psychiatric condition "is expected to improve if his medical condition improves and if he can refrain from using alcohol." AR 711-12. Dr. Parikh differed from Dr. Hurwitz in his assessment that Patterson was not impaired in his ability to carry out complex instructions or in his interaction with the general public. AR 712. As the opinion of an examining psychiatrist supported by independent clinical findings, Dr. Parikh's assessment constitutes substantial evidence supporting the ALJ's determination. *Andrews*, 53 F.3d at 1041. The opinion of a non-examining physician cannot by itself justify the rejection of Dr. Parikh's assessment. *See Ryan*, 528 F.3d at 1202. Nor has Patterson shown a direct conflict between the treating physician opinions and Dr. Parikh's functional assessment. *See supra* at 6.

**F. ALJ's Hypothetical Question To The Vocational Expert**

The ALJ may rely on testimony a VE gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005). The ALJ is not required to include limitations that are not in his findings. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

Patterson argues that the ALJ erred by not including side effects from medication and Dr. Hurwitz's residual functional capacity assessment in his hypothetical to the vocational expert. JS 17-18. Given that the ALJ did not err, as discussed above, the ALJ properly excluded those limitations from his hypothetical to the VE. *Osenbrock*, 240 F.3d at 1164 (excluding side effects from hypothetical); *see Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (same).

**IV.**

**CONCLUSION**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 26, 2010

Alicia G. Rosenberg

ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE